### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of February, two thousand twenty-two.

PRESENT:
>ROBERT D. SACK,
>JOSEPH F. BIANCO,
>>*Circuit Judges.*
>STEFAN R. UNDERHILL[1],
>>*District Judge.*

_____

ANGEL AGUSTIN ARGUETA ANARIBA,
A.K.A. ANGEL ANARIBA,
>*Petitioner*,

v.                                               19-2862
                                                 NAC

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
>*Respondent.*

_____

---

[1] Chief Judge Stefan R. Underhill, United States District Court for the District of Connecticut, sitting by designation.

**FOR PETITIONER:**    MICHAEL RAYFIELD, Mayer Brown LLP, New York, NY; ANNIE MATHEWS (Elyssa N. Williams, *on the brief*), The Bronx Defenders, Bronx, NY.

**FOR RESPONDENT:**    BROOKE MARIE MAURER, Trial Attorney, Office of Immigration Litigation (Jeffrey Bossert Clark, Acting Assistant Attorney General, Civil Division; Justin R. Markel, Senior Litigation Counsel, *on the brief*), United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA" or "agency") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED and the case is REMANDED to the BIA for further proceedings consistent with this Order.

Petitioner Angel Agustin Argueta Anariba, a native and citizen of Honduras, seeks review of an August 23, 2019 decision of the BIA affirming a March 18, 2019 decision of an Immigration Judge ("IJ"), which denied asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). *In re Angel Agustin Argueta Anariba,* No. A 094 825 836 (B.I.A. Aug. 23, 2019), *aff'g* No. A 094 825 836 (Immigr. Ct. N.Y.C. Mar. 18, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

2

We have reviewed the IJ's decision as modified and supplemented by the BIA. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review factual findings for substantial evidence and questions of law *de novo*. *See Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009). We grant the petition for review. We remand the case to the BIA for further proceedings consistent with this Order.

## I.   CAT Relief

We remand for reconsideration of the denial of CAT relief because the IJ mischaracterized Argueta's claim and failed to consider material evidence.[2] Deferral of removal under the CAT is not barred by any convictions, but an applicant must show that he would more likely than not be tortured. *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a); *Khouzam v. Ashcroft*, 361 F.3d 161, 168 (2d Cir. 2004). Argueta applied for CAT relief on the ground that he would be "subject to torture at the

---

[2] Because Argueta was ordered removed for a crime involving moral turpitude ("CIMT"), our jurisdiction to review his removal order is limited to "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(C), (D). However, that jurisdictional limitation does not apply to our review of his CAT claim, because "[a] CAT order is distinct from a final order of removal and does not affect the validity of the final order of removal." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020).

hands of the family and gang associates" of the people who "attacked and threatened him in the US" because he had stabbed one of the people who threatened him. Certified Admin. Rec. ("CAR") at 1177. Argueta testified that, after the stabbing, a group of men in Honduras beat his mother to seek information on his whereabouts. The account of this attack was confirmed through affidavits he submitted from a neighbor in Honduras, as well as from his sisters, which described other threats on Argueta's life in both Honduras and the United States. Additionally, Argueta provided an affidavit from an expert witness, Dr. Lirio Gutiérrez, a professor at the National University of Colombia whose research focuses on Honduran gang activity, who confirmed that someone in Argueta's situation was at great risk of torture.

The IJ's denial of CAT relief was premised on a mischaracterization of both Argueta's claim and the evidence Argueta submitted regarding the nature of his risk of torture. *See Doe v. Sessions*, 886 F.3d 203, 210–11 (2d Cir. 2018) (remanding CAT claim where "agency overlooked key evidence and mischaracterized the record"). Although the IJ acknowledged Argueta's claim that he feared the friends and

family of the people who had threatened and attacked him in the United States—one of whom he had stabbed—the IJ focused only on the threat of harm from individuals in the United States, not individuals in Honduras. An IJ is required to conduct "a certain minimum level of analysis" and must provide "some indication that [he] considered material evidence supporting a petitioner's claim." *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005). The IJ's decision does not indicate that he considered material evidence relating to the risk of harm to Argueta in Honduras from friends and family of the people whom Argueta feared in the United States or their associates in the Mara Salvatrucha ("MS-13") gang. Moreover, the BIA did not address this argument when Argueta raised it on appeal.

In addition, Dr. Gutiérrez's affidavit described the international coordination of the MS-13 gang and violent family feuds in Honduras. Though the IJ noted that "the Court must consider all evidence relevant to the possibility of future torture," CAR at 677, the IJ did not discuss that affidavit, nor did the BIA address Argueta's reliance on that affidavit on appeal. Based on her knowledge of Honduras, Dr.

Gutiérrez concluded that Argueta was "at very high risk" of torture in Honduras because of his conflict in the United States, particularly because the families of the individuals he feared had clearly expressed their intent to seek revenge and had already attacked and threatened Argueta's family members.  CAR at 1240.  The agency did not explain why it discounted the expert's opinion.  In addition, the IJ did not address the evidence in the record of the potential connection of the MS-13 gang to the ongoing threats, including evidence that one of the people with whom Argueta had a monetary dispute was a leader in MS-13 and that Argueta had to be placed in protective custody while incarcerated to separate him from prisoners affiliated with the gang.

 The IJ also mischaracterized evidence of a death threat Argueta received from the father of one of the people with whom he had the monetary dispute.  In particular, a neighbor of Argueta's mother stated in her affidavit that this father told her that Argueta would be killed if he returned to Honduras because Argueta had tried to kill the man's "family member."  CAR at 1119.  As noted above, after Argueta and the man's son had a dispute, the son and two others beat and

threatened Argueta in the United States.  Argueta eventually stabbed one of those attackers, but the stabbing victim was not the son of the man who conveyed this threat about Argueta to the neighbor in Honduras.

The IJ disregarded this threat, finding that it did not come from a family member of Argueta's stabbing victim. Critically, the IJ did not acknowledge evidence that the individual stabbed by Argueta and the son of the man who threatened Argueta were cousins or that family feuds in Honduras often involve extended family.  Thus, those circumstances could have explained the threatening man's reference to Argueta trying to kill a "family member."

The IJ also discounted threats made to Argueta's sisters— even though these threats explicitly referenced harm to Argueta in Honduras—because these threats occurred in the United States.  Even though these threats were made against Argueta's sisters in the United States, the threats were about harm that Argueta would suffer in Honduras.  For example, one sister explained that the individual with whom Argueta had the monetary dispute followed her to work, told her that he knew her brother was out of jail and would be deported to

Honduras, and threatened that "[w]e have some sweet candy for him waiting in Honduras, and we know when he is getting out and when he's being sent back." CAR at 1125. She explained that "sweet candy" was code for the assertion that he had "people with guns and other arms [who] are ready to kill" Argueta upon his return to Honduras. *Id*. Therefore, these threats conveyed to Argueta's sisters—directed at Argueta and relating to harm once he returned to Honduras—could not be discounted (as suggested by the IJ) simply because the threats were conveyed inside the United States, rather than in Honduras.

Finally, the IJ erred by discounting the attack on Argueta's mother because, in the IJ's view, there was no evidence linking the attack to the individuals that Argueta feared in the United States. Although an IJ may deny CAT relief where a claim is "too speculative" in that it "involves a chain of assumptions," *Savchuck v. Mukasey*, 518 F.3d 119, 124 (2d Cir. 2008) (internal quotation marks omitted), here, the IJ did not consider the attack on Argueta's mother in light of the fact that her attackers said they were looking for him, and in light of Argueta's other evidence supporting

8

his claim that people in Honduras would kill him on behalf of the people he credibly feared in the United States.

Accordingly, we remand to have the agency properly consider and address the unrebutted expert testimony about the risk Argueta faces if deported, as well as the other categories of evidence that the agency discounted based upon a misreading or mischaracterization of such evidence.

II.  Asylum and Withholding of Removal

The agency also determined that Argueta was ineligible for asylum and withholding of removal because he had been convicted of a particularly serious crime.

A noncitizen is barred from asylum and withholding of removal if "the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States."  8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii).  In addition to convictions that are *per se* particularly serious, *id.* §§ 1158(b)(2)(B)(i)-(ii), 1231(b)(3)(B), the BIA may exercise the Attorney General's discretion to determine if a crime was particularly serious, considering (1) "the nature of the conviction," (2) "the circumstances and underlying

9

facts of the conviction," (3) "the type of sentence imposed," and (4) "whether the type and circumstances of the crime indicate that the alien will be a danger to the community," *Nethagani v. Mukasey*, 532 F.3d 150, 155 (2d Cir. 2008) (internal quotation marks omitted).[3]  "[C]rimes against persons are more likely to be particularly serious than are crimes against property."  *Id.*

Argueta argues that the agency, relying upon *Matter of G-G-S-*, 26 I. & N. Dec. 339 (A.G. 2014), erred in finding that his mental health could not be considered in the particularly serious crime analysis.[4]  In December 2021, the Attorney General asked that *Matter of B-Z-R-*, 28 I. & N. Dec. 424 (A.G. 2021) be referred to him for review to consider "[w]hether mental health may be considered when determining whether an individual was convicted of a 'particularly serious crime' within the meaning of 8 U.S.C.

---

[3] The danger to the community factor does not require a separate analysis.  *See Nethagani*, 532 F.3d at 154 n.1.

[4] Argueta's removal for a CIMT implicates the jurisdictional limitation in 8 U.S.C. § 1252(a)(2)(C).  We acknowledge that the Supreme Court left open whether this limitation applies to withholding of removal.  *Nasrallah*, 140 S. Ct. at 1694.  We do not reach the issue here because, even if this limitation applies, it would not prevent us from reviewing a question of law.  *See* 8 U.S.C. § 1252(a)(2)(D).

§§ 1158(b)(2)(A)(ii) and 1231 (b)(3)(B)(ii)." *Id*. (citing *Matter of G-G-S-*, 26 I. & N. Dec. at 339). In addition, another panel of this Court has this precise issue pending before it. *See Augustin v. Garland*, No. 20-1724 (2d Cir. filed June 2, 2020).

The government suggests that we need not address this issue because the IJ alternatively decided that, even if he were to consider Argueta's mental health as a factor in the particularly serious crime determination, "it would not alter the finding that his crime is a particularly serious one." CAR at 96. However, as Argueta correctly notes, the BIA never adopted this alternate holding and, thus, it is not part of the decision on review. *See, e.g.*, *Passi v. Mukasey*, 535 F.3d 98, 100 (2d Cir. 2008) ("[O]ur review is confined to those reasons for denying relief that were adopted by the BIA.").

Accordingly, we remand the asylum and withholding of removal claims, along with the CAT claim, to allow the agency to consider the expected guidance from the Attorney General on this issue in *Matter of B-Z-R-*, as well as to allow the BIA to consider whether it wishes to review the IJ's

11

alternative finding that Argueta's crime is particularly serious even when his mental health is considered.

III. Testimony by Video-Teleconferencing

Argueta also asserts that the IJ's use of video-teleconferencing to receive Argueta's testimony in the removal proceedings, rather than requiring in-person testimony, violated Argueta's due process rights and the agency's own regulations. However, as Argueta's counsel acknowledged at oral argument, this issue becomes moot once there is a remand. Thus, in light of our remand of the claims on the other grounds outlined *supra*, we need not address this issue.

IV. Waiver of Admissibility

Argueta further contends that the agency abused its discretion by refusing to consider his application for a U visa, with an accompanying request for an inadmissibility waiver, until there was an adjudication by U.S. Citizenship and Immigration Services ("USCIS") on Argueta's U visa application.

To be eligible for a U visa, a petitioner must establish that he: (1) "has suffered substantial physical or mental

abuse as a result of having been a victim of criminal activity"; (2) "possesses information concerning criminal activity"; and (3) "has been helpful, is being helpful, or is likely to be helpful" to an investigation or prosecution.  8 U.S.C. § 1101(a)(15)(U)(i); *see also* 8 C.F.R. § 214.14(b). Argueta applied for a U visa in July 2016, asserting that he was eligible because, in 2006, his cousin stabbed him in the chest, and he fully cooperated with the resulting investigation and prosecution.  In December 2018, with his U visa application still pending with USCIS, Argueta requested that the IJ adjudicate his application for a waiver of admissibility.  At the hearing, the IJ found that he lacked jurisdiction to grant the waiver.  The BIA made the alternate finding that the request was premature until there was a ruling from USCIS and that Argueta had not moved for a continuance to wait for a decision by the USCIS on the U visa.

However, on September 24, 2019, after the BIA's decision, Argueta's U visa was denied and, on September 25, 2019, Argueta's waiver of inadmissibility was denied by USCIS. Thus, nothing precludes Argueta from asking the BIA to reconsider this issue on remand now that USCIS has denied a

13

waiver.  Accordingly, we need not address this issue at this juncture.

*                    *                    *

For the foregoing reasons, the petition for review is GRANTED, the decision of the BIA is VACATED, and the case is REMANDED to the BIA for further proceedings consistent with this Order.  All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

14